Douglass v. The State of Florida—Syllabus.

H. F. DOUGLASS, PLAINTIFF IN ERROR, v. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Where the count in an information upon which a party is convicted is intended to stand alone, and it is not "so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense or expose him after conviction or acquittal, to substantial danger of a new prosecution for the same offense," it is sufficient.

2. It is not a good ground of objection to the count in an information upon which a party was convicted that the persons who were material witnesses for him were joined as accessories in the said count—especially when they were called by him and testified fully in his behalf.

3. Where the charges given by the trial judge are unobjectionable as far as they extend, it is not a ground of objection to them that they do not cover certain phases of the case which the accused thinks is material to his defense. His proper course is to request instructions upon those phases of the case.

4. In determining the propriety of a given charge, all the charges and instructions should be considered, and if when so considered they fairly present the law of the case in such manner as not to be misleading, no reversible error has occurred.

5. The trial court commits no error in refusing to permit a question to a witness on cross-examination which has no apparent relevancy to the issue.

6. The trial court commits no reversible error in refusing to allow the accused, upon objection by the state, to introduce evidence, which if it had been introduced would not have been of any avail to the accused.

7    The evidence examined and found sufficient to sustain the verdict.

8.   The sentence in this case is found defective under the rule laid down in Thompson v. State, 52 Fla.113, 41 South Rep. 899, and therefore the judgment is reversed and the cause remanded for a proper sentence

This case was decided by Division B.

Writ of Error to the Criminal Court of Record for Orange County.

The facts in the case are stated in the opinion of the Court.

*Bryan & Bryan* and *Massey & Warlow,* for Plaintiff in Error;

*W. H. Ellis,* Attorney General, for the State.

HOCKER, J.: The plaintiff in error, Harman F. Douglass, hereafter referred to as the plaintiff, was convicted of manslaughter in the Criminal Court of Record of Orange County, in June, 1906, and from the sentence and judgment entered, has sued out a writ of error from this court. The only count of the information necessary to be considered is the second, which is as follows, *viz.*: "And the county solicitor aforesaid, under oath as aforesaid, further information makes that Harman F. Douglass, late of the county of Orange aforesaid, in the county and state aforesaid, laborer, on the 1st day of March, in the year of our Lord One Thousand Nine Hundred and Six, and continuously from said date until the 29th day of

March, 1906, with force and arms at and in the County of Orange and State of Florida aforesaid, at a certain turpentine camp then and there being operated in the said County of Orange and State of Florida, the said Harman F. Douglass having then and there the direction, management and control of the said turpentine camp, and by reason thereof having then and there the supreme custody and control of one George Campbell, the said George Campbell being then and there held as a prisoner in said turpentine camp by the said Harman F. Douglass, and the said Harman F. Douglass, by virtue of so having the supreme control and custody of the said George Campbell as aforesaid, being under the legal duty to provide for the necessary protection of the life and health of the said George Campbell, and under the legal duty to provide for and furnish all and sufficient medicines, medical and surgical care and attention, and proper food and nursing in case of sickness of the said George Campbell while so in his supreme control and custody, and having the means to discharge all of his herein recited duties, and the said George Campbell, being so held as a prisoner, being unable by reason thereof to provide for himself the necessary medicines, medical care and attention, and proper food and nursing, and the said George Campbell being then and there ill and crippled from certain grievous wounds, inflammations and sores upon his feet and body (a better description of which is to the county solicitor unknown), the said Harman F. Douglass did then and there, unlawfully, feloniously and culpably fail and neglect to provide the necessary food, care, nursing, medicines and medical care and attention and treatment for the said George Campbell, proper and needful for the said George Campbell in his said ill and crippled con-

dition, by reason whereof the said George Campbell then and there sickened and languished of a mortal sickness, so as aforesaid, caused, produced, permitted and procured, feloniously and with culpable negligence then and there by the said Harman F. Douglass, until the 29th day of March, 1906, on which said 29th day of March, 1906, the said George Campbell, of the said mortal sickness, so as aforesaid caused, produced, permitted and procured, feloniously and of his culpable negligence by the said Harman F. Douglass, then and there died.

And the county solicitor aforesaid, under oath as aforesaid, further information makes that James F. Lowry and Arthur Lowry, late of the County of Orange aforesaid, in the county and State aforesaid, laborers, were then and there at the time and place of the commission of the felony aforesaid, feloniously present, and did then and there unlawfully, feloniously and culpably counsel, aid, incite, abet and procure the said Harman F. Douglass the said felony, in manner and form and by the means aforesaid, then and there to do and commit.

And so the county solicitor aforesaid, under oath as aforesaid, does say that the said Harman F. Douglass, James F. Lowry and Arthur Lowry, the said George Campbell, in the manner and by the means aforesaid, unlawfully, feloniously and of their culpable negligence aforesaid, did then and there kill and slay."

The plaintiff, at and before the time of the alleged offense, was in charge of a convict camp near Gabriella in Orange County, and had control of the convicts placed in said camp, including George Campbell, described in the information.

The evidence shows, we think, beyond any reasonable

doubt that Campbell was a convict and was placed in charge of the plaintiff about the first of January, 1906. At that time and until about the first of March, 1906, he appears to have been in reasonably good health. At about the latter date Campbell's feet, and especially one of them, became diseased so that he could not walk to and from his work in the turpentine farm, and he staid around the stockade in which the convicts were confined when not at work. He became worse and about the 22nd of March, a physician, who had been summoned to the camp to attend a convict who had been shot, was asked by some one in the camp to look at Campbell. The physician looked at his swollen and diseased foot, and prescribed a disinfectant wash to be applied to the sores. He seems to have been told that there was not much the matter with Campbell, and gave him a very perfunctory examination. He says that he had a very bad foot, was very much emaciated, and for all that he knows might have had typhoid fever. After the 22nd of March Campbell got worse, his foot became very offensive, and he was placed in a small house outside the stockade called the hospital.

On the 28th of March two gentleman from Orlando, Mr. Jones, a lawyer, and Mr. Kirkwood, a deputy sheriff, went to the camp and in the absence of Mr. Douglass, who was out fishing, they went into the room where Campbell was. They found him lying on a pallet in one corner of the room, which was about 14 by 18 feet. The pallet was made of a slight layer of hay, with a comfort thrown over it, and Campbell was covered with a blanket. Another sick convict was lying on a similar pallet in another corner of the room. The room was filthy and exceedingly offensive, so much so that Mr. Kirkwood says he had to leave it after being in it a few moments. By

Campbell's side on the floor was a small can containing
water, and a plate in which there was some cornbread,
and perhaps some other article of food, over which, as
over Campbell, the flies were swarming in vast numbers.
Mr. Jones examined Campbell's feet, and they were
wrapped in rags and were very filthy. The pus had oozed
out from under the edges of the rags and had soaked
through them. Campbell was of a ginger-bread color, and
was ashy. He was a great deal emaciated. The swelling
in his legs extended above his ankles. Mr. Jones placed
his hand on Campbell's forehead and found his skin soft
and clammy. His pulse was very feeble. The stench from
his feet was "insufferable." Mr. Kirkwood corroborates
Mr. Jones in all important particulars, and there is in
the record no evidence which substantially conflicts with
this. Campbell died on the 29th of March, and no physi-
cian saw him or was called to see him after the 22nd of
March. A fair inference from the testimony of the physi-
cians is that his death was accelerated, if not caused, by
septicaemia, or blood poisoning, resulting from the ab-
sorption into the system of the poisonous pus from his
diseased foot. The plaintiff in error does not deny that
it was his duty to care for Campbell. He endeavors to
show by several of the employes around the stockade that
he was attended, and they say that his sore foot was
washed with antiseptic wash as directed by the doctor on
the 22nd of March, and some quinine and chill tonic was
given, but Campbell's condition on the 28th as described
by Mr. Jones and Mr. Kirkwood was not contradicted.
Mr. Douglass admits that Mr. Jones remonstrated with
him on the afternoon of the 28th about the condition of
the convict, and was even insulting, but he sent for no
physician and took no such step, and employed no such

means, as humanity and his duty under the circumstances demanded, to give Campbell proper medical care, food and comfortable and clean surroundings.

It is unnecessary for us to refer to the testimony offered by the state to show cruel treatment of this negro convict by Capt. Douglass, under the first count in the information. The evidence was that of convicts. He was acquitted under this count. We think the evidence thoroughly sustains the conviction under the second count of the information.

The first assignment of error which is argued questions the correctness and sufficiency of the second count of the information, and is based on a motion to quash the information made and overruled in the trial court. It is contended that the second count is bad for duplicity and multifariousness and is vague, indefinite and uncertain in its allegations of the cause of the death of Campbell. In order to sustain these contentions it is insisted, among other things, that the second count should be construed in connection with the first. It seems to us that the second count was intended to stand, and does stand upon its own allegations, and the arguments presented are too refined for practical application. Giving to the language of the count its ordinary meaning it seems to us that it is not obnoxious to any fatal criticism and fairly states facts which show an unlawful homicide caused by the negligence of the plaintiff in error. Nor do we think that Douglass has any right to object that the two Lowrys were improperly joined in the information as accessories. If they were so improperly joined, it was a matter of defense for them, but not for Douglass. He was not thereby deprived of their testimony on the trial, but re-

3—S C

ceived the full benefit of it. If it had appeared at the trial that they were joined improperly, and for the purpose of depriving Douglass of the full value of their testimony with the jury, that fact would doubtless have weighed against the State rather than against Douglass. We do not think the information was so "vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense." Barber v. State, 52 Fla. 5, 42 South. Rep. 86, and cases cited.

It follows from what we have stated that in our opinion the verdict was neither contrary to law nor to the evidence.

Several charges given by the court are objected to because it is alleged that they failed to cover such acts of attention as the testimony shows that Capt. Douglass gave to Campbell while he was sick. It is contended that this evidence shows that Douglass did the best he could, or what a reasonably prudent man would have done under the circumstances. The charges, it seems to us, are unobjectionable as far as they go, and if the accused desired to have instructions upon the lines indicated, he should have requested them. Post v. Bird, 28 Fla. 1, 9 South. Rep. 888; Blount v. State, 30 Fla. 287, 11 South. Rep. 547; Shiver v. State, 41 Fla. 630, text 642, 27 South. Rep. 36; Bynum v. State, 46 Fla. 142, 35 South. Rep. 65.

Objection is made to the following charge given by the trial judge: "Gentlemen of the jury, in the trial of this case, and in the reaching of your verdict, you will be governed solely and entirely by the evidence as you have heard it upon the stand, and as it goes to satisfy you or not to satisfy you as to the guilt of the defendants, and

your judgment only must prevail and govern on the testimony." It is objected that the charge should have told the jury that their judgment, understanding and reason must be convinced (of the guilt of the accused) beyond a reasonable doubt. In other charges the court abundantly and thoroughly instructed the jury on the subject of reasonable doubt and the charges are to be taken together.

The state introduced as a witness Dr. Henkel, the physician who saw Campbell on the 22nd of March. He was asked on cross-examination, "did you tell Captain Douglass, or some of the boys there, that you had had a free laborer or a free man with a foot similar to that?" The state objected to this question and the objection was sustained. This ruling is assigned as error here. It does not seem to us that the question was proper from any point of view.

The only other assignment which is presented so as to entitle it to consideration is one based on the refusal of the trial court to permit the accused to introduce in evidence certain rules and regulations in regard to the care and maintenance of county convicts by contractors, prepared by the Governor. We have read those rules, as contained in the record, and are of opinion that their introduction in evidence would have only emphasized the negligence of the defendant. The seventh rule is as follows: "Contractors shall furnish all the medicine and medical attention necessary for the *proper* care of convicts, shall furnish a building to be used as a hospital, and when a convict becomes sick enough to need medical attention he must be kept in the hospital until discharged by the attending physician. Each such convict shall be furnished a single bed with springs, mattress, pillow, etc., also a net to keep flies away, and such food as the physician

shall prescribe unless otherwise provided in contract with county commissioners." No contract was offered in evidence providing anything contrary to this rule, and the evidence in the case at bar shows that it was violated in nearly every one of its provisions.

We think the plaintiff in error, Harman F. Douglass, was properly convicted of manslaughter on the second count of the information.

The plaintiff in error was sentenced to pay a fine of $2,500.00 and the costs of prosecution, and in default of payment thereof to confinement in the State penitentiary for five years. This sentence is faulty for the reasons pointed out, because of a similar sentence, in Thompson v. State, 52 Fla. 113, 41 South. Rep. 899, and therefore the judgment is reversed, and the cause remanded for a proper sentence. The costs of this appeal are to be taxed against the County of Orange.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.