JAMES M. DISNEY, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Opinion Filed Dec. 19, 1916.

1. Where an indictment for murder in the second degree may be defective in charging that crime, but is sufficient to charge the crime of manslaughter of which the defendant is found guilty, the judgment will not be arrested because the indictment fails accurately to charge the crime of murder.

2. Motions in arrest of judgment based upon informal or imperfect allegations of essential facts in the indictment, should not prevail unless the indictment wholly fails to allege the crime or an essential element of the crime or is so vague and indefinite as to mislead the accused and embarrass him in the preparation of his defense, or expose him after acquittal or conviction to substantial danger of a new prosecution for the same offense.

3. Informal or imperfect allegations of essential facts in an indictment should be taken advantage of by motion to quash.

4. No reversible error is committed by the trial court in giving instructions which when considered together are free from error prejudicial to the defendant.

5. Every portion of a charge bearing on a subject must be considered in determining whether the charge upon such subject is free from error.

6. It is not error for the court to refuse certain requested instruc-

tions when the substance of such requested instructions had
already been covered by charges given.

7.  Evidence examined and found sufficient to support the verdict.

Writ of Error to Circuit Court, Orange County;
James W. Perkins, Judge.

Judgment affirmed.

*Davis & Giles,* for Plaintiff in Error;

*T. F. West,* Attorney General, and *C. O. Andrews,*
Assistant, for the State.

ELLIS, J.—James M. Disney was indicted for murder
in the second degree by the grand jury of St. Lucie
County for killing Daniel S. Carlton.  Upon the appli-
cation of the defendant below a change of venue was
ordered to Orange County after one trial in St. Lucie
County, which resulted in a failure of the jury to agree on
a verdict.  A trial in Orange County held in May, 1916,
resulted in a verdict of manslaughter against the de-
fendant.  To the judgment entered upon that verdict the
defendant took a writ of error, and has assigned twelve
errors.  Of the errors assigned the defendant has aban-
doned the third and seventh.

The eleventh assignment rests upon an order overrul-
ing a motion in arrest of judgment attacking the suffi-
ciency of the indictment.

Murder in the second degree as defined by our statute
is the unlawful killing of a human being "when perpe-
trated by an act imminently dangerous to another and
evincing a depraved mind regardless of human life, al-
though without any premeditated design to effect the

death of any particular individual." Sec. 3205 General Statutes of 1906, Florida Compiled Laws of 1914.

The indictment charged the defendant Disney with unlawfully shooting at Carlton *"in manner* imminently dangerous to the said Daniel S. Carlton, the said James M. Disney then and there thereby *in such manner* evincing a depraved mind and regardless of human life, without a premeditated design to effect the death of the said Daniel S. Carlton," thereby striking Carlton with the leaden bullets in the body and inflicting a mortal wound of which he died. Counsel for plaintiff in error contend ingeniously that it is the quality of the act and not the manner of the defendant in its performance that stigmatizes it as unlawful. That the act which caused the death of Carlton might have been lawful, while the manner of the defendant in committing it may have evinced a depraved mind. It is true that the manner of one in the performance of a lawful act may under some circumstances evince a depraved mind which the act itself, irrespective of the manner of its performance might not imply, but if the act was unlawful the manner of its performance would not invest it with the character of lawfulness.

The indictment in this case charges the act to have been unlawful, and while the idea of premeditation is excluded because not charged it also by its terms excludes the idea that the act was either excusable or justifiable. Even if the indictment was insufficient as charging murder in the second degree it is sufficient to charge manslaughter of which the defendant was convicted. See Brown v. State, 18 Fla. 472.

A motion in arrest of judgment based upon informal or imperfect allegations of essential facts in the indictment, should not prevail unless the indictment wholly

fails to allege a crime or an essential element of a crime, or is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense, or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense. Barineau v. State, 71 Fla. 598, 72 South. Rep. 179; Sumpter v. State, 62 Fla. 98, 57 South. Rep. 202; Robinson v. State, 69 Fla. 521, 68 South. Rep. 649. While the indictment in this case may have been vulnerable to attack by a motion to quash it on account of the inaccurate language used to describe the act which resulted in Carlton's death, it cannot be said that the language used was so utterly obscure and misleading as to embarrass the accused in the preparation of his defense, and because of the rule that the indictment on a motion in arrest of judgment should receive a liberal construction and the fact that it sufficiently charges manslaughter, the offense of which the defendant was convicted, the motion was properly overruled.

After giving a charge upon murder in the second degree and illustrating how the offense may be committed, the court charged the jury upon the subject of manslaughter in the following language:

"3.   The killing of a human being by the act, procurement or culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide, as hereinafter defined, nor murder in any of its degrees is manslaughter.   Thus a killing done in sudden heat of passion, without any premeditated design to effect death, but not being done under such circumstances as would make it justifiable homicide as hereinafter defined, would be manslaughter.   And where two men engage in mutual combat, both being at fault, and neither being the aggressor more than the other, and in such combat one

slay the other, such killing is manslaughter." The defendant by his counsel excepted to this charge and it is
made the basis of the first assignment of error. The
second assignment raises the same question as the first;
it is based upon the eleventh charge which was duly excepted to by defendant and was as follows:

"11.   Or, if you believe from the evidence, beyond a
reasonable doubt, that the defendant, James M. Disney, in
the County of St. Lucie and State of Florida, at any time
within two years prior to the finding of the indictment,
shot and killed the deceased, Daniel S. Carlton, and that
he did so in a mutual combat between the defendant and
the said Daniel S. Carlton, both of them being at fault,
and neither being the aggressor more than the other,
it will be your duty to find the defendant guilty of manslaughter."

The criticism made of these two charges is that the
first contains an instruction upon the subject of mutual
combat, which was not warranted by the evidence; that
the second repeated the error of the first and assumed
the fact that neither the defendant nor the deceased was
the aggressor, but that both were at fault. Neither instruction assumes the fact of a mutual combat to have
been established by the evidence. The first reference to
a mutual combat was by way of explanation as that when
one kills another under such circumstances, both being
at fault and neither being the aggressor, such killing
would be manslaughter; and in the second reference
to it the jury were told that if they believed from
the evidence beyond a reasonable doubt that the
defendant killed Carlton in a mutual combat,
both being at fault and neither being the aggressor, they should find the defendant guilty of manslaughter. Construing the two charges together we

think that it is apparent that the court did not assume the fact to be established, nor was the point unduly emphasized to the exclusion of the defense of self defense. The law on the subject was correctly stated in the charges. See 1 Wharton's Crim. Law, 617; Giles v. State, 126 Ga. 549; 55 S. E. Rep. 405; Wharton on Homicide, 536-538. Moreover the defendant was charged with murder in the second degree, by the instructions complained of the jury were permitted if they saw fit to convict of manslaughter instead of murder. If there was error it seems to have been more prejudicial to the State than the defendant, because the plea of self defense being rejected by the jury the defendant is not in a position to complain that the charge permitted a conviction of a lesser degree of homicide than the one charged in the indictment. The plaintiff in error must not only make the error complained of to appear, but he should show that it was prejudicial. Cross v. Aby, 55 Fla. 311, 45 South. Rep. 820; Brown v. State, *supra;* Danson v. State, 62 Fla. 29, 56 South. Rep. 677; McKay v. Lane, 5 Fla. 268; Hooker v. Johnson, 10 Fla. 198; State v. Quick, 150 N. C. 820, 64 S. E. Rep. 168. We see nothing in these charges which precluded the jury. from considering the evidence as to self defense.

As to the point that there was no evidence to which a charge upon the law of mutual combat was applicable, we think it is not well taken. There was evidence to which the charge was applicable and from which the jury might very readily have concluded that the killing of Carlton was the result of a mutual combat. Jesse Lee testified that he saw Carlton coming up the street, saw him when "he was right in front of that alley coming walking toward us back two or three steps." Then pistol shots were fired "right out of the mouth of the alley," that

32

Disney fired the shots. That Carlton "whirled right around and facing the alley went to fall" and that Carlton fired when "he was falling" and that he fired about two or three seconds after Disney fired. Titus Knowles saw Carlton stop at or near the alley and saw Disney step out "in conversation with the sheriff." That he saw the sheriff Carlton as if he intended to "slap or knock something;" his hand was open. Disney stepped back and fired, the sheriff staggered back, balanced himself "and shot back rapidly on the marshal." And "right after he shot at the marshal the marshal shot back at him." Alonzo Knowles testified as follows: "On the night of the shooting I was standing in front of the Indian River Provision Company's store, I and my brother Titus, and I saw sheriff Carlton standing on the sidewalk right in front of the alley between the Indian River and Raulerson's, and then I saw the marshal step to the sidewalk out of the alley and he and Mr. Carlton were talking, but what the conversation was I did not hear any of the words that passed between them, and in a few minutes I saw Mr. Carlton raise one of his hands in that manner as if he was going to deliver a blow, and then I saw the marshal raise one in that manner as if he were ready to defend the blow from hitting him, but whether Mr. Carlton did deliver the blow or not I am unable to say, I did not see him deliver any because other people was passing between me at that time and going in to the store, and they stood and talked a few more words and then I saw the marshal step back a step or two backwards from Mr. Carlton and with a quick motion with his hands like that and then I heard the pistol shoot and saw the flame of fire from his hands toward the sheriff and at that time both men went to  shooting until the sheriff

fell and when he fell the marshal stepped over him and shot two times on the ground."

The first and second assignments of error are not sustained.

The fourth assignment of error attacks the following instruction to the jury given by the court:

"13-5. If the jury believe from the evidence that the defendant Disney shot and killed the deceased Daniel Carlton in a sudden heat of irresistible passion due to gross personal indignities inflicted by Carlton upon the defendant, and that such killing was due to said irresistible impulse of anger, and if you believe that the defendant from the evidence at the time was not in danger of losing his own life, or suffer great bodily harm, you will find him guilty of manslaughter, if you so believe him guilty beyond a reasonable doubt."

This case was one in which the defendant through the skill of his counsel in the able management of his defense presented to the court and jury every phase of the unfortunate transaction that might justify or excuse his act in killing the deceased, or divest it of the elements of murder in the second degree with which he was charged. The charges given by the court to the jury dealt with the law of murder in the second degree, manslaughter and the law of self defense. The rule as to the construction of charges has been so frequently announced by this court that it would seem unnecessary to again announce it. The able brief of the Attorney General and his assistant direct attention to this rule which we think meets the argument of defendant's counsel. "The entire portion of a charge bearing on a subject must be considered in determining whether the charge is free from error." Starke v. State, 49 Fla. 41, 37 South. Rep. 850; Padgett v. State, 64 Fla. 389, 59

South. Rep. 946; Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318; Danson v. State, *supra;* Douglass v. State, 53 Fla. 27, 43 South. Rep. 424; Davis v. State, 54 Fla. 34, 44 South. Rep. 757; in which last named case the court said: "It is not required that a single charge or instruction should contain all the law relating to the particular subject treated therein." Mathis v. State, 45 Fla. 46, 34 South. Rep. 287; Knight v. State, 44 Fla. 94, 32 South. Rep. 110; Jacksonville Electric Co. v. Sloan, 52 Fla. 257, 42 South. Rep. 516. The charge complained of when read in connection with other charges given upon the law of self defense, could not have misled the jury. They were repeatedly instructed that the defendant had a right to defend himself if he was assaulted, even to the extent of taking the life of the deceased, if the circumstances of the assault were such as would have led a reasonably cautious and prudent man to believe that the defendant's life was in danger, or that he was in danger of receiving great bodily harm; that if after considering all the evidence they had a reasonable doubt as to whether the "circumstances surrounding the defendant at the time of firing the fatal shot were such as to lead a reasonably cautious and prudent man to believe that his life was in danger, or that he was in danger of receiving great bodily harm, and that the defendant did so believe and acted on such belief," they should find the defendant not guilty.

In the charge complained of the court discussed the law as applicable in case the killing was done "in a sudden heat of irresistible passion," or "irresistible impulse of anger." The law of self defense was fully given in other charges. Considering the charges together both phases of the case were fully covered and the jury informed as to the law. It must be assumed that the jury construed the

charge complained of in connection with the others re-
ferred to defining the law of self defense and gathered
from the instructions that if the killing was the result of a
sudden heat of·irresistible passion, or due to irresistible
impulse of anger, it was manslaughter; but on the other
hand if defendant acted in lawful defense of himself as
the other instructions explained, or if they had a reason-
able doubt on that point, then in that case they should
acquit him.

The fourteenth and fifteenth instructions which are
referred to and discussed in counsel's brief under the
fourth assignment, as well as the fifth and sixth assign-
ments of error are as follows:

"14.   If you believe from the evidence beyond a
reasonable doubt that there had been an altercation be-
tween the deceased and the defendant, in which the de-
ceased insulted and personally assaulted the defendant,
and if you believe that he, the deceased, menaced the
defendant during the altercation with a deadly weapon,
a pistol, and if you believe from the evidence that the de-
ceased before the killing desisted from his attacks and
had indicated a relinquishment of further offensive treat-
ment of the defendant, and that the defendant, actuated
by the heat of passion, and irresistible impulse, shot and
killed the deceased, not being at the time in danger of
death or bodily harm himself, there being no sufficient
cooling time in which the voice of mercy and reason
could be heard by the defendant, you will find the de-
fendant guilty of manslaughter."

"15.   If you find from the evidence beyond a reason-
able doubt that at the time of the killing the defendant
as a cautious and reasonable man had reason to apprehend
that he was in danger of life or great bodily harm, or
that such danger was reasonably apparent, at the hands

of the deceased, and with this belief Disney shot the deceased, you will find him not guilty, but if on the contrary you believe beyond a reasonable doubt that immediately before and at the time of the killing, the deceased had desisted from further attack and its accompanying menace with a deadly weapon, and that the defendant was in no immediate or apparent danger of death or great bodily harm, but actuated by uncontrollable passion and anger, created by the indignities heaped upon him by the deceased, shot and killed the deceased, you will find the defendant guilty of manslaughter."

There was evidence to which the above charges were applicable and which would have justified the conclusion that Daniel Carlton met the defendant at the alley and insulted him even to the extent of slapping him or making an effort to do so and that the defendant goaded to irrepressible anger by the insulting language and conduct of Carlton began shooting after the latter had turned away.

A killing in the heat of passion occurs when the state of mind of the slayer is necessarily different from that when the killing is done in self defense. In the heat of passion the slayer is oblivious to his real or apparent situation. Whether he believes or does not believe that he is in danger is immaterial; it has no bearing upon the question. He is intoxicated by his passion, is impelled by a blind and unreasoning fury to redress his real or imagined injury and while in that condition of frenzy and distraction fires the fatal shot. In that condition of mind premeditation is supposed to be impossible, and depravity which characterizes murder in the second degree absent. It is impractical for the court to reiterate the law upon the subject of self defense in every charge that he gives the jury in a case of homicide where that

defense is set up. The jury is supposed to understand and apply the law as it is given in the charges considered in their entirety and not to segregate one instruction from the body of charges and act upon that one alone to the exclusion of all the others. Nor can we say that the jury could have been misled by the above charges into such error. They did not contain patently erroneous propositions of law. As we construe them the jury were told that if the defendant fired the fatal shot actuated by heat of passion and irresistible impulse he would be guilty of manslaughter, even if the jury believed that the deceased had "desisted from his attacks and had indicated a relinquishment of further offensive treatment of the defendant" and that the defendant was not in danger of death or bodily harm. In other words even if the defendant was in no danger and the deceased had abandoned his attacks and relinquished further offensive treatment of the defendant, the latter could not be found guilty of murder in the second degree if he fired the fatal shot in the heat of passion. Immediately following this instruction the jury were told that if they had "a reasonable doubt that at the time of the killing the defendant as a cautious and reasonable man had reason to apprehend that he was in danger of 'life' or great bodily harm, or that such danger was reasonably apparent at the hands of the deceased, and with this belief Disney shot the deceased" they should find Disney not guilty.

In the charges complained of the court was dealing with the law of manslaughter and not self defense, yet the jury was again reminded of the defendant's rights as secured by the law of self defense, upon which subject in other charges they had been fully instructed.

In the Lane case, 44 Fla., 105, 32 South. Rep. 896, the trial court in an instruction upon the special subject of self defense, told the jury that defendant "must satisfy the jury that the defense was necessary at the time." This court said that the special charge on the subject of self defense imposes on the defendant the duty of satisfying the jury that the defense was necessary, which was error and was not corrected by other instructions. On this point, however, Mr. Justice CARTER disssented, upon the ground that the error was eliminated when the charge was taken as a whole. The case followed the case of Hubbard v. State, 37 Fla. 156, 20 South. Rep. 235, in which the court upon the subject of self defense gave a charge containing the same error. In the Danford case, 53 Fla. 4, 43 South. Rep. 593, the trial court in a charge upon the subject of threats, said even if threats had been made against defendant, the latter's justification "can be found only in the facts, if they are shown by the evidence *establishing* self defense." This court said that the word "established" was perhaps unfortunate, but "taken in connection with what preceded, we cannot say the jury were misled." See also Davis v. State, 54 Fla. 34, 44 South. Rep. 757. In the case of Escambia County Electric Light & Power Co. v. Southerland, 61 Fla. 167, 55 South. Rep. 83, the court said that to state "contradictory or repugnant propositions" in a charge is error because they are necessarily misleading and confusing when presented to a jury. It cannot be correctly said however that the charges complained of were repugnant to and contradictory of the charges given by the court on the subject of self defense. When read together the jury no doubt understood that the defendant had the right to act upon the circumstances as they appeared to him at the time of the dif-

ficulty, and if those circumstances were of such character as to justify a reasonably prudent and cautious man in believing that it was necessary to slay the deceased in order for the defendant to save his own life or save himself from great bodily harm, he was justified. In the Pinder case, 27 Fla. 370, 8 South. Rep. 837, there was only one charge upon the subject of self defense and that was erroneous in that it required the jury to believe that the defendant must have acted under a "well grounded" belief justified by the circumstance that it was necessary to take the life of the person slain. The case of Wilson v. State, 30 Fla. 234, 11 South. Rep. 556, was reversed because of the error of the trial court in refusing to allow evidence of threats made by the deceased against the accused. On the subject of self defense the defendant requested an instruction which the court gave after adding a clause that failed to embody the idea "of there being reasonable ground for the accused to believe that he was then in imminent danger of his life or great bodily harm from the deceased." But the court said this disadvantage could not be complained of by him. In the Hathaway case, 32 Fla. 56, 13 South. Rep. 592, the trial court added to an instruction on self defense requested by the defendant the following: "provided the evidence satisfies you that there was imminent danger of it being accomplished." The court held that the use of the word *satisfy* was error. The Alvarez case, 41 Fla. 532, 27 South. Rep. 40, was affirmed, the assignments of error based upon the giving or refusal to give certain instructions were not sustained. In the Richard case, 42 Fla. 528, 29 South. Rep. 413, the judgment was affirmed, this court holding that certain requested instructions were properly refused because the points emphasized were fully covered by the general instructions

of the court and the charges that were given at defendant's request.    In the case of Padgett v. State, 40 Fla. 451, 24 South. Rep. 145, the judgment of the lower court was affirmed.    Assignments of error based upon the court's refusal to give certain instructions at defendant's request were not sustained because some were not applicable to the evidence and others fully covered by other charges.    Certain paragraphs in other charges were excepted to by the defendant, but the objection was not sustained by this court because the propositions excepted to by the defendant "when taken in connection with the whole of the instructions of which they form a part," no error appeared.    In the Olds case, 44 Fla. 452, 33 South. Rep. 296, the court held that a charge, which contained propositions subject to criticism, would not be held bad if considered in its entirety it was unobjectionable.    In the case of Sylvester v. State, 46 Fla. 166, 35 South. Rep. 142, exception was taken to a charge given by the court upon the subject of freedom from fault on the part of one setting up the defense of self defense, because the charge omitted to instruct the jury that the defendant was entitled to the benefit of any reasonable doubt as to whether he was in fault.    This court said the general charge covered the point and it was not necessary to repeat the caution with every special instruction given.    The judgment was affirmed.    In Kennard v. State, 42 Fla. 591, 28 South. Rep. 858, the court criticized certain instructions, but said: "In the present case we do not see that the jury could have been misled in view of other instructions given to them bearing directly upon the facts submitted."    The judgment was affirmed. We think that the fourth, fifth and sixth assignments of error are not well taken.

Counsel for defendant in the eighth assignment of error complains that in certain charges the trial court "stressed" the question of "aggressor in a personal difficulty" when as a matter of fact there was no "evidence in the case from any witness professing to have seen the commencement of the difficulty showing that Disney at any time was the aggressor or commenced the same." We have examined the charges referred to particularly with the view of discovering if they laid any undue or improper stress upon any testimony or fact or point of law applicable to the case. We are unable to agree with counsel that the charges are amenable to that criticism. And we do not understand that a charge would be considered erroneous which was not applicable to facts evidenced by direct or testimonial evidence. The testimony of Lee and Knowles above referred to was alone sufficient upon which to base the charges in which reference was made to the question of who may have been the aggressor in the difficulty.

The defendant requested the following instruction which was refused:

"9. If you find from the evidence in this case that the defendant, Disney, was a police officer in the town of Fort Pierce, and that while acting as such officer in the discharge of his duty was approached by Carlton, the deceased, and that Carlton covered Disney with his pistol and threatened to kill him, and while having him so covered, struck him several times and defied the defendant to draw his pistol or defend himself, and that the defendant at that time believed his life was in danger, or that he was in danger of receiving great bodily harm, and had reasonable grounds so to believe, and that, acting on such belief, he, the defendant, drew his pistol and shot and killed the deceased, then you should find the de-

fendant not guilty." The refusal to give this instruction is assigned as error.

The following charges were given to the jury which we think fully covered the proposition embraced in the one refused:

"8.    If you find from the evidence in this case that the defendant, Disney, was a police officer in the town of Fort Pierce, and that while acting as such officer in the discharge of his duty and was approached by Carlton, the deceased, and that Carlton covered Disney with his pistol and threatened to kill him, and while having him so covered, struck him several times and defied the defendant to draw his pistol or to defend himself, and that before the defendant did draw his pistol the said Carlton shot and wounded Disney and that under these circumstances the defendant believing that his life was in danger, drew his pistol and killed the deceased, then you should find the defendant not guilty."

"10.    If, after hearing all the evidence in the case, you have a reasonable doubt as to whether or not the circumstances surrounding the defendant at the time of firing the fatal shot were such as to lead a reasonably cautious and prudent man to believe that his life was in danger or that he was in danger of receiving great bodily harm, and that the defendant did so believe and acted on such belief, and if you further find that the defendant did not bring about the difficulty, then in that case you must find the defendant not guilty."

"5.    The defendant is presumed to be innocent, and such presumption remains and abides with him throughout every stage of the trial, until removed to your satisfaction by competent evidence, beyond a reasonable doubt."

The tenth assignment of error rests upon the refusal of the court to give the following instruction requested by the defendant:

"11.  The defendant is presumed to be innocent until proven guilty by the evidence beyond every reasonable doubt, and this rests and abides with him throughout every stage of the trial until the jury, after hearing all the evidence, come to the conclusion that there exists no reasonable doubt of the defendant's guilt.  This is not a mere idle presumption or a maxim of the law, but it is substantial right belonging to the defendant, and this presumption of innocence must be removed by the evidence introduced in the case before the jury have any right to render a verdict of guilt."

The sixth charge given by the court, which was as follows:  "The defendant is entitled to the benefit of every reasonable doubt which may arise in your minds from the evidence or lack of evidence in the case, and you cannot convict him of the crime charged, or any lesser grade of homicide, unless you are satisfied of his guilt beyond a reasonable doubt," read in connection with the fifth which immediately preceded it, and quoted above, left the defendant no ground of complaint that the jury were not fully advised as to the defendant's right to the benefit of a reasonable doubt of his guilt.

Under the twelfth assignment counsel for defendant discusses the sufficiency of the evidence to support the verdict of manslaughter.  This assignment is not well taken.  We think the jury whose sole province it was to reconcile all conflicting evidence if possible upon the theory that all the witnesses spoke the truth, and if unable to do that, to reject such as they deemed unworthy of belief, were fully justified in arriving at the conclusion stated in their verdict.

.    The judgment of the court is, therefore, affirmed.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL and WHITFIELD, JJ., concur.