838 So.2d 1222 (2003)
Albert Lee PALMORE, Appellant,
v.
STATE of Florida, Appellee.
No. 1D01-2202.
District Court of Appeal of Florida, First District.
March 7, 2003.
*1223 Nancy A. Daniels, Public Defender and Nancy Showalter, Assistant Public Defender, Tallahassee, for Appellant.
Charlie Crist, Attorney General, and Karen Armstrong, Assistant Attorney General, Office of the Attorney General, Tallahassee, for Appellee.
HAWKES, J.
Appellant, Albert Lee Palmore, appeals his convictions for second degree murder and assault and his resulting life sentence as a prison releasee reoffender. As grounds, Appellant argues, in pertinent part, that the trial court erred by denying defense counsel's request for a special jury instruction on his theory of defense (i.e., that Appellant acted in the heat of passion). Finding the issue preserved for appeal, we agree with Appellant and reverse and remand for a new trial.
The giving or withholding of a requested jury instruction is reviewed under the abuse of discretion standard of review. See Pozo v. State, 682 So.2d 1124, 1126 (Fla. 1st DCA 1996), rev. denied, 691 So.2d 1081 (Fla.1997); see also Bozeman v. State, 714 So.2d 570 (Fla. 1st DCA 1998). However, the trial judge's discretion is fairly narrow because a criminal defendant is entitled, by law, to have the jury instructed on his theory of defense if there is any evidence to support his theory and the theory is recognized as valid under Florida law. See Mora v. State, 814 So.2d 322 (Fla.2002); see also Bozeman, 714 So.2d at 572 (noting that the defendant was entitled to jury instruction on his theory of defense even if the only evidence to support that theory was the defendant's testimony); Williams v. State, 588 So.2d 44, 45 (Fla. 1st DCA 1991) (noting that the defendant was entitled to have jury instructed on his theory of defense even if the evidence was weak or improbable).

I
In the case at bar, evidence was presented that Appellant and the victim, Addie Jones (Jones), lived together for some period of time in Jones' home, and were the natural parents of a four-year-old girl. Approximately one month prior to the murder, Appellant was court-ordered to have no contact with Jones and, for a brief period of time, lived with his sister. During the time Appellant lived with his sister, Jones began a relationship with Leverage Parrish (Parrish). Subsequently, Jones came to the home of Appellant's sister and asked him to get his clothes and "come on home." Jones assured Appellant her relationship with Parrish was over and she wished to raise their daughter together. At the time of the offense, Appellant was living in Jones' home at her request.
In the 10 hours preceding the murder, Appellant and Jones had contact several times. Appellant was aware that Jones was with Parrish, and a witness described Appellant's response as emotional and angry. Appellant cried at one point, and on two occasions, made statements to the effect that if he "couldn't have [his] family, no one could and [he] would kill them all." Upon returning home with Parrish between *1224 1:30 a.m. and 2:00 a.m., Jones asked the Panama City Police to walk through her home to ascertain whether Appellant was present. A police officer testified Jones was frightened.
Shortly before 2:30 a.m., Appellant looked in the window and saw Jones and Parrish naked in the master bedroom. Appellant broke through the window, and Jones fled into the child's bedroom closet. A struggle ensued between Appellant and Parrish, or Parrish attempted to keep Appellant from going into the child's bedroom. Parrish subsequently fled by breaking through the child's bedroom window. When Jones ran out of the closet, Appellant stabbed her several times. Two of the wounds were fatal. In his statement to police, Appellant described his actions:
I just went to stabbing her. Went to stabbing her. Next thing I know I'm, I'm just, after I realized what I was doing, I dropped the knife and I reached down for her ...
Appellant didn't know how many times he stabbed Jones because "I didcouldn't really focus." Describing his thoughts when he saw Jones and Parrish naked together Appellant stated that "it just, it hurted me. It hurt me real bad. Cause I didn't think she would do that after she came back and got me. I was doin' pretty good at my sister's house."

II
At trial, Appellant's sole theory of defense was that, although he committed the act which resulted in Jones' death, it constituted heat of passion manslaughter, not second degree murder. Heat of passion negating the depraved mind element of second degree murder is a valid defense in Florida. See Paz v. State, 777 So.2d 983 (Fla. 3d DCA 2000). Appellant both requested and proffered a special jury instruction defining heat of passion in relation to second degree murder. Although not constituting excusable homicide, heat of passion under this theory of defense would reduce second degree murder to manslaughter if accepted by the jury. The State objected, arguing the applicable law regarding the defense was explained in the standard jury instructions. The trial court sustained the State's objection, and in so doing, erred.

A
The State did not contest, either at the trial court or on appeal, that heat of passion is a valid theory of defense to the depraved mind element of second degree murder or that evidence was offered at trial to support the defense. The State's only argument is that the standard jury instruction is sufficient. The State's argument is without merit. The standard jury instructions contain the term "heat of passion" only once. The instruction[1] is based on section 782.03, Florida Statutes, which defines excusable homicide, and the term "heat of passion" itself is not defined in the instruction.
In the case at bar, excusable homicide was not the defense theory. The jury was instructed that if they found that Appellant *1225 acted in the heat of passion, the killing would be "excusable" and therefore "lawful." The standard jury instructions do not contain language which would inform the jury that, pursuant to Florida law, if they believed Appellant's passion resulted in a state of mind "where `depravity which characterizes murder in the second degree (is) absent,'" they could return a verdict of manslaughter. Paz, 777 So.2d at 984 (quoting Disney v. State, 72 Fla. 492, 73 So. 598, 601 (1916)). Accordingly, the jury was not properly instructed on Appellant's theory of defense.

B
The State argues that, if the trial court erred by improperly instructing the jury, the error was harmless as defined by State v. DiGuilio, 491 So.2d 1129 (Fla.1986). Harmless error analysis requires the State, as beneficiary of the error, to prove beyond a reasonable doubt that the error did not contribute to the verdict or, alternatively, that there is no reasonable possibility the error contributed to the conviction. Id at 1135. Here, the jury was instructed prior to the presentation of evidence that "it is the judge's responsibility to decide which laws apply to this case and to explain those laws to you." During the closing argument defense counsel told the jury:
It is not something to be condoned by any means, but I believe that it doesn't rise, in this case, to murder. It is more appropriately termed a crime of passion or a killing that occurs in the heat of passion and then by legal definition it is manslaughter and not murder.

A few minutes later the court instructed the jury as to excusable homicide. This instruction was the only time the term "heat of passion" was used by the judge. Under this instruction heat of passion results in a lawful or excusable homicide. This was contrary to defense counsel's statement to the jury regarding the applicable law given just a few minutes earlier. After instructing the jury on the rules for deliberation, the judge instructed the jury that:
[Y]ou must follow these rules in order to return a lawful verdict. First, you must follow the law as it set out in these instructions. If you fail to follow the law your verdict will be a miscarriage of justice. There is no reason for failing to follow the law in this case.
Based on that instruction, it is reasonable to conclude the jury would feel required to follow the law as set forth in the jury instructions. The trial court did not instruct the jury that Florida law permits a conviction for manslaughter, as argued by defense counsel, if they accepted that the evidence showed the Appellant acted in the heat of passion. Finally, the State's strenuous objection to the proposed instruction below seems to contradict its argument on appeal that the failure to instruct the jury on the defense theory could not have contributed to the conviction.
Because the standard jury instruction neither explains the term "heat of passion," in relation to second degree murder, nor recognizes Appellant's theory of defense, the State cannot prove "there is no reasonable possibility that the error contributed to the conviction." Id.; c.f., Billeaud v. State, 578 So.2d 343 (Fla. 1st DCA 1991) (holding trial court erred by excluding evidence that extra-marital affair of defendant's wife sent him into a blind, unthinking rage resulting in a lack of capacity to premeditate murder, but because evidence was cumulative, the error was harmless).

III
Appellant also challenges the sufficiency of the evidence to prove the killing *1226 was committed with "ill will, hatred, spite or evil intent," as required by the depraved mind element of second degree murder. Appellant failed to make a motion for a judgment of acquittal at the close of the State's case, and now attempts to make the equivalent on appeal. The question presented by a motion for a judgment of acquittal is whether the evidence is legally sufficient to support the charged offense. Jones v. State, 790 So.2d 1194 (Fla. 1st DCA 2001). "The courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." Lynch v. State, 293 So.2d 44, 45 (Fla.1974).
Had the jury been properly instructed and chosen not to accept the defense theory that Appellant acted in the heat of passion, the evidence would have been legally sufficient to support a conviction for second degree murder. Accordingly, it is unnecessary to address the consequences of defense counsel's failure to make a motion for a judgement of acquittal, or the parties' other contentions relating to this issue.

IV
Based on the foregoing, we reverse Appellant's conviction for second degree murder and remand for a new trial with the jury properly instructed on the Appellant's theory of defense.
REVERSED AND REMANDED.
BARFIELD and POLSTON, JJ., CONCUR.
NOTES
[1] The killing of a human being is excusable, and therefore lawful, under any one of the following three circumstances:

1. When the killing is committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution and without any unlawful intent, or
2. When the killing occurs by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or
3. When the killing is committed by accident and misfortune resulting from a sudden combat, if a dangerous weapon is not used and the killing is not done in a cruel or unusual manner. (Emphasis added.)