DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BURNIE REED,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

Nos. 4D18-1533 & 4D18-1534

[December 11, 2019]

Consolidated appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Lisa M. Porter, Judge; L.T. Case Nos. 10-000330CF10A & 12-002306CF10A.

Carey Haughwout, Public Defender, and Gary Lee Caldwell, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Allan R. Geesey, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Burnie Reed appeals from his convictions for second-degree murder and attempted first-degree murder, and from an order revoking his community control. We affirm on all issues raised and write only to address Appellant's argument that the trial court erred in refusing to instruct on the heat of passion defense as to the first-degree murder charge (the jury convicted Appellant of the lesser-included offense of second-degree murder).

## Background

This is a tragic case in which Appellant shot two sisters, killing one and wounding the other. Appellant was brought to trial on charges of first-degree murder and attempted first-degree murder.

Appellant's then-girlfriend, Chutney McNair, got off work around midnight, and got a ride home with a co-worker. On the ride home, Appellant called Chutney several times, and the two argued over the

phone. Chutney was four months pregnant, purportedly by Appellant, and the two argued about the baby and their relationship. Chutney told Appellant there was no baby, and that she wanted to end the relationship. Appellant kept asking Chutney when she was coming home. He lived across the street from her. Chutney was scared, so she called her mother (Karen McNair) and asked her to come outside to meet her. Karen was waiting outside when Chutney's ride pulled up.

As Chutney pulled up, Appellant walked over from across the street. He had been sitting in his car in his driveway, waiting. He told Karen he wanted to speak to Chutney. Karen had a set of Appellant's keys in her hand to return to him. When Karen tried to hand Appellant his keys, he pushed Karen. Chutney's sister Bianca then came out of the house, and said "Burnie, don't hit my mom," or "Burnie, not tonight." According to several witnesses, that was all Bianca had said to Appellant when he raised his gun up and shot her in the face. Bianca fell to the ground. She did not have a weapon or anything in her hands.

After Appellant shot Bianca, Chutney ran to her godfather's house across the street. Appellant chased after her, with the gun in his hand. As Chutney banged on the door to her godfather's house, Appellant shot her in the head.

Appellant testified in his own defense that, when he called Chutney that night, she was mad at him about going to a party and said she wanted to break up. He told Chutney all he cared about was the baby, and Chutney said there was not going to be a baby. Appellant was hurt by the conversation. He sat in his car until Chutney pulled up. Armed with a gun in his pants pocket, he walked across the street to the McNair house. He grabbed his keys out of Karen's hand and said he just wanted to talk to Chutney. Karen said, "Listen, after tonight, listen," and grabbed his arm. Appellant did not want to hear what Karen was saying; he just wanted to talk to Chutney. When Chutney got out of the car, he "snatched away" from Karen. He "wasn't mad," just "a little upset."

Appellant further testified that when he "snatched away" from Karen, "we kind of spinned around, . . . they scatter[ed]," and he "[saw] something running from the house out of [his] periphery, and [he] panicked." He said, "I kind of stumbled as I'm panicking, I'm trying to run, too, and I pull out the gun and shoot"; "I wasn't even looking, I was already going, going this way (indicating), and I just pulled and shot"; "[w]hen I saw them scatter and I see it out my periphery, I just panicked, I just pulled and shot, I ain't aim, I didn't even know what was coming, just bad judgment, I just pulled and shot." He maintained that he never identified the person approaching

2

him and did not learn that Bianca had been shot and killed until the next morning.  He denied ever holding his gun up and pointing it at someone.  He also said he carried the gun for protection—not because he planned to shoot at either of the McNair sisters.

The jury convicted Appellant of the second-degree murder of Bianca (a lesser included offense), and the attempted first-degree murder of Chutney, as charged.  This appeal followed.

## Analysis

Appellant argues the trial court erred by refusing to give a heat of passion instruction as to count 1, the killing of Bianca McNair.  Specifically, Appellant argues that the failure to give the requested instruction resulted in (1) a flawed instruction on manslaughter, as heat of passion is part of the definition of manslaughter, and (2) an incomplete instruction on second-degree murder.  Appellant submits that the failure to give the instruction requires reversal of the conviction for second-degree murder.

The state responds that the issue was not properly preserved, and no evidence supported the instruction in any event.

The following discussion occurred during the charge conference:

> [DEFENSE COUNSEL]: We would be asking for the heat of passion instruction on Count One.
>
> [PROSECUTOR]: Judge, I'm going to object, as before.  The Court ruled before that, as to Bianca McNair, all of the evidence, both the State's evidence and the Defense's evidence, was that heat of passion had nothing to do with the killing of Bianca McNair.
>
> THE COURT: Number one, I don't see it from the State's presentation of the evidence, and I especially don't see it now that your client testified and said that he saw something in his peripheral vision and just shot.  So, I don't see how this is heat of passion.  That will be denied.

Later, after reading the instructions to the jury, the trial court asked counsel if they had any objection to the instructions "not previously raised," or "as given."  Defense counsel responded that he had no objections.

Regarding preservation, while Appellant made a general request for a heat of passion instruction as to count 1, he did not raise any objection subsequent to the trial court's denial of the request. "For an issue to be preserved for appeal . . . it 'must be presented to the lower court and the specific legal argument or ground to be argued on appeal must be part of that presentation if it is to be considered preserved.'" *Archer v. State*, 613 So. 2d 446, 448 (Fla. 1993) (quoting *Tillman v. State*, 471 So. 2d 32, 35 (Fla. 1985)). Thus, this issue was not preserved for appellate consideration. Nonetheless, even assuming the issue was properly preserved, it fails on the merits.

"Generally speaking, the standard of review for jury instructions is abuse of discretion . . . ." *Krause v. State*, 98 So. 3d 71, 73 (Fla. 4th DCA 2012). However, "a criminal defendant is entitled, upon request and by law, to a jury instruction on the law pertaining to the theory of defense if *any* evidence supports the theory, irrespective of how weak this evidence is." *Barnes v. State,* 108 So. 3d 700, 702 (Fla. 1st DCA 2013).

"In order for the defense of heat of passion to be available there must be 'adequate provocation . . . as might obscure the reason or dominate the volition of an ordinary reasonable man.'" *Paz v. State*, 777 So. 2d 983, 984 (Fla. 3d DCA 2000) (quoting *Rivers v. State*, 75 Fla. 401, 78 So. 343, 345 (1918)). Arguments alone, we have held, are insufficient to constitute adequate provocation. *See, e.g.*, *Douglas v. State*, 652 So. 2d 887, 891 (Fla. 4th DCA 1995) ("the marital squabbles which occurred on the day of the killing in the present case do not constitute the reasonable provocation required for the crime of passion defense"); *Daley v. State*, 957 So. 2d 17, 18 (Fla. 4th DCA 2007) (testimony from eyewitness that she heard some arguing and then heard and saw shots being fired, without more, did not support a jury instruction on heat of passion).

> A killing in the 'heat of passion' occurs when the state of mind of the slayer is necessarily different from that when the killing is done in self-defense. In the heat of passion the slayer is oblivious to his real or apparent situation. Whether he believes or does not believe that he is in danger is immaterial; it has no bearing upon the question. He is intoxicated by his passion, is impelled by a blind and unreasoning fury to redress his real or imagined injury, and while in that condition of frenzy and distraction fires the fatal shot.

*Daley*, 957 So. 2d at 18 (quoting *Disney v. State*, 72 Fla. 492, 502, 73 So. 598, 601 (1916)).

4

As to the killing of Bianca McNair in this case, the evidence does not come close to supporting a heat of passion defense. According to the state's witnesses, when Bianca came out of the house, she had said nothing more to Appellant than "don't hurt my mom" when Appellant raised his gun and shot her in the face. And Appellant's testimony, as he noted in his initial brief, was that he "fired instinctively when he thought he saw someone charging him." His exact testimony was: "I see it out my periphery, I just panicked, I just pulled and shot, I ain't aim, I didn't even know what was coming, just bad judgment, I just pulled and shot." As to his state of mind just before Bianca came out of the house, he testified: "I wasn't mad. I was a little upset"; "I just wanted to straighten one thing out . . . it was no problem with me leaving."

Under the above set of facts it would have been error for the trial court *to instruct* the jury on heat of passion. *See Augustin v. State*, 244 So. 3d 336, 337 (Fla. 4th DCA 2018) ("The trial court erred in giving the heat of passion instruction where there was no evidence to support it.").

## Conclusion

In short, as the trial court concluded, no evidence supported a heat of passion defense as to the killing of Bianca McNair. Thus, the trial court did not err in refusing to give the instruction. As noted previously, we affirm without discussion as to the other issues raised in the appeal.

*Affirmed.*

CIKLIN and GERBER, JJ., concur.

\*　　　\*　　　\*

**Not final until disposition of timely filed motion for rehearing.**

5