# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2022-2030
_____

TACORIUS CORDALE
STALLWORTH,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Escambia County.
John F. Simon, Jr., Judge.

March 20, 2024

ON MOTION FOR REHEARING

Appellant's motion for rehearing is denied, but the opinion issued on November 22, 2023, is withdrawn and the following opinion is substituted in its place:

B.L. THOMAS, J.

Appellant challenges his convictions for first-degree murder and two counts of aggravated battery causing great bodily harm. He also appeals the imposition of $100 cost of prosecution fee. We affirm the judgment and sentence, but we write to discuss whether the trial court erred by failing to give the duress jury instruction. We reject all other arguments raised without comment.

Appellant's girlfriend testified that they met up with a man named Myles and were doing drugs. During that meeting, Appellant told her that he and Myles planned to rob someone later that night. Before the robbery, they picked up "Wild Bill." Appellant then drove the group to a church and the three men got out of the car to rob a nearby drug shed. The girlfriend stayed in the car but testified that all three men left and had handguns and that Appellant was wearing a mask. When the girlfriend asked Appellant what happened, he told her to "shut up."

Other testimony revealed that the group went to the drug shed where they found "Xa" standing outside of it. They made "Xa" knock on the door and identify himself. L.J. got the door and was greeted by people in masks. One of the masked individuals shot L.J. in the leg. A struggle ensued between a masked individual and a second victim, who would soon be murdered. L.J. testified he heard gunshots in the shed. The men took the second victim outside, and then L.J. heard more gunshots. The masked group left, stealing drugs and barber equipment. "Xa" then came back inside the shed; he had been shot in the leg. L.J. then exited the shed and saw the second victim, now dead on the ground outside the shed.

Later testimony and exhibits showed that the deceased victim had ten gunshot wounds, two graze wounds, and one shrapnel wound. The evidence also showed that the gunshot wounds came from different directions. The evidence showed that three different guns were fired during the commission of the robbery.

Appellant did not testify at his trial, but a videorecorded investigative interview was published to the jury. During the interview, Appellant stated that he, his girlfriend, Myles, and a girl named Kiana, drove to the church near the drug shed, so Myles could buy some drugs. Appellant stated it was only when they were about to go to the shed that Myles told him that they would rob the trap house. Appellant stated he was scared and terrified of Myles, and Myles had a gun. Appellant claimed he only went through with the robbery because he was scared that Myles had a gun. Further, Appellant's girlfriend testified that Appellant told her it was a "kill or be killed situation." However, Appellant never told her or anyone else that he felt threatened.

2

Appellant's trial attorney asked for a duress instruction, asserting that: (1) Appellant's video interview showed that he was afraid of his aggressive co-defendant; (2) Appellant was given a mask and told to put it on; (3) and Appellant told police he thought he had to do it.

The trial court applied the six-prong test in *Mickel v. State,* 929 So. 2d 1192 (Fla. 4th DCA 2006) and found there was insufficient evidence to support an instruction on duress. The six-prong test in *Mickel* is identical to Florida Criminal Standard Jury Instruction 3.6(k), which states:

> 1. The defendant reasonably believed a danger or emergency existed which was not intentionally caused by himself;
>
> 2. The danger or emergency threatened significant harm to himself or a third person;
>
> 3. The threatened harm must have been real, imminent, and impending;
>
> 4. The defendant had no reasonable means to avoid the danger or emergency except by committing the crime;
>
> 5. The defendant's crime must have been committed out of duress to avoid the danger or emergency;
>
> 6. The harm that the defendant avoided must outweigh the harm caused by committing the crime.

Fla. Std. Jury Inst. (Crim.) 3.6(k).

A trial court's decision on whether to give a requested jury instruction is reviewed for abuse of discretion. *Palmore v. State*, 838 So. 2d 1222, 1223 (Fla. 1st DCA 2003). Discretion is abused when the trial court acts in an arbitrary or fanciful way; that is, when it takes a view no reasonable person would take. *Barnes v. State*, 303 So. 3d 275, 277 (Fla. 1st DCA 2020).

A defendant is entitled to have the jury instructed on the rules of law applicable to his theory of defense, such as duress, "if there is any evidence to support such instruction." *Campbell v. State,* 577

So. 2d 932, 935 (Fla. 1991). Appellant challenges the trial court's ruling by pointing to statements he made to investigators in his recorded interview, which was published to the jury. Appellant stated that he had seen Myles angry before and that he knew Myles's "history." Responding to questions from his attorney during the interview, Appellant said that he didn't refuse to participate in the robbery because he had "seen Myles beat people up over stuff like that." In an interview, when his attorney asked whether Appellant was afraid of what Myles might do, "if you went back," Appellant answered: "Like, I know he would do something to me, and I know he would do something to my girlfriend at the time."

But when Appellant's attorney asked whether Myles directly threatened him if Appellant did not participate in the robbery, Appellant indicated Myles made no direct threat. And despite Appellant's self-serving assertion regarding his perception of an indirect threat from Myles, the trial court determined there was insufficient evidence to support a duress instruction. This Court is may not reweigh the evidence. *Edwards v. State*, 257 So. 3d 586, 588 (Fla. 1st DCA 2018).

A defendant's self-serving assertion, which is not supported by any other evidence, will not support reversal of a trial court's discretionary decision not to give the duress instruction. *Gahley,* 567 So. 2d at 459 (finding Appellant's testimony concerning his apprehension in the presence of the co-defendant was inconsistent with all other evidence presented at trial and thus falls far short of any indication that appellant was threatened).

There was simply no sufficient evidence of a "threatened harm" that was "*real*, imminent, and impending." Fla. Std. Jury Inst. (Crim.) 3.6(k); *see Ford v. State*, 350 So. 3d 109 (Fla. 1st DCA 2022) (holding that defendant being apprehensive when accomplice was waving his gun around and ordering defendant to grab the drugs did not merit a duress instruction where the evidence showed defendant planned to commit the robbery in advance); *Gahley v. State*, 567 So. 2d 456 (Fla. 1st DCA 1990) (holding the defendant being "stunned and intimidated" when the co-defendant produced his gun and struck the victim did not merit a duress instruction because there was no evidence the co-

4

defendant ever threatened or even intended to intimidate the defendant). For this reason, the trial court did not err when it declined to instruct the jury on duress.

AFFIRMED.

LEWIS and ROWE, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Jessica J. Yeary, Public Defender, and Victor D. Holder, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Robert "Charlie" Lee, Assistant Attorney General, Tallahassee, for Appellee.