57 So.2d 333 (1952)
ALDAY
v.
STATE.
Supreme Court of Florida, en Banc.
March 4, 1952.
Ramsey & Leath, Panama City, for appellant.
Richard W. Ervin, Atty. Gen., and William A. O'Bryan, Asst. Atty. Gen., for appellee.
TERRELL, Justice.
Appellant was tried and convicted of murder in the first degree without recommendation. The death penalty was imposed, hence this appeal. The death was the product of a fracas which arose from these facts: Mose Hill, a deputy sheriff of Bay County, was advised that appellant and Kizzie Pelt, his housekeeper, were drunk at his home in Port Saint Joe. Hill proceeded to appellant's home without a warrant and undertook to arrest Kizzie Pelt. An altercation between appellant and Hill ensued and was followed by an exchange of blows. Hill abandoned the encounter and went to his automobile in front of the house where he secured handcuffs or some other articles and returned to the house. The affray was picked up where it was abandoned, several blows were exchanged when Hill whipped out his pistol and shot appellant in the breast. Appellant returned the compliment by striking Hill over the head with a 30-30 gun barrel. This blow was followed by several others from which Hill died about six hours later.
Several questions are urged for determination, the errors on which some of them were predicated may not have been seasonably preserved but this is a capital case, the responsibility to review which the law imposes on this court. It is not amiss to point out at the outset that it was one of those unfortunate tragedies that might have as well been avoided by the exercise of the slightest discretion on the part of either of the participants.
It is evident that when Hill arrived at appellant's home he found appellant and Kizzie Pelt in a drunken condition but so far as the record discloses they were not disturbing the peace. Nor is there a suggestion that they were guilty of any crime that would have authorized Hill to enter the home without a warrant of authority to do so. A mission to check on a pair of drunks is not so urgent as to relieve a deputy sheriff from arming himself with a warrant when he proceeds to one's home to make an arrest. Section 901.15, F.S.A. defines the circumstances under which a sheriff or police officer may arrest without a warrant but we do not think any such circumstances existed in this case. The law authorizes one whose home is assaulted without lawful authority to use such force as is necessary to repel the assailant. Wilson v. State, 30 Fla. 234, 11 So. 556, 17 L.R.A. 654; Danford v. State, 53 Fla. 4, 43 So. 593; Russell v. State, 61 Fla. *334 50, 54 So. 360; Roberson v. State, 43 Fla. 156, 29 So. 535, 52 L.R.A. 751.
Some of these cases hold that an arrest made without a warrant amounts to a trespass and affords the person arrested such provocation to resist that if murder is committed in doing so it will be reduced to manslaughter. When an arrest is attempted in the manner shown here the arrested party may use reasonable force proportionate to the injury attempted to effect his escape but he is not permitted to use more. If from a result of sudden passion he uses more, the offense is manslaughter, but if it results from premeditation it is murder. In this case appellant was shot in the breast when use of the gun barrel by his assailant was imminent. Both were brandishing deadly weapons. In this case the parties exemplified a reckless disregard of human life. Hill entered appellant's home without lawful authority and the latter used more force than was necessary to eject him. In our view the most the evidence will support is manslaughter.
The judgment is accordingly reversed with directions to enter a judgment and sentence of manslaughter.
Reversed with directions.
SEBRING, C.J., and THOMAS, HOBSON and MATHEWS, JJ., concur.
CHAPMAN and ROBERTS, JJ., dissent.
CHAPMAN, Justice (dissenting).
The appellant, Emanuel Alday, was indicted by a grand jury of Gulf County, Florida, for the crime of murder in the first degree for the killing of Mose Hill on May 10, 1950. He was duly arraigned and later placed upon trial before a jury in Gulf County and the jury, after hearing all the evidence, and instructions upon the law as given by the trial court, returned a verdict of guilty as charged, whereupon the trial court imposed the death penalty and Alday appealed.
The record discloses that the appellant Alday, for some months prior to May 10, 1950, lived in a small house or shack then situated on the western outskirts of the Town of Port St. Joe. The appellant had as his housekeeper therein one Kizzie Pelt, who was the mother of four children not related to the appellant. The eldest of the four children was a daughter and approximately seventeen years of age who had married a man by the name of Armstrong. Armstrong on May 10, 1950, was in legal custody or was confined to a jail at Port St. Joe. The remaining children were 13 and 9 and the age of the fourth child is not clear from the record. Kizzie Pelt and her three unmarried children, Estelle Pelt Armstrong and husband and the appellant resided or made their home in the shack or small house near the canal on the road leading west out of Port St. Joe.
On the morning of May 10, 1950, the appellant left his home and went to Port St. Joe and spent some few hours and was returning about the middle of the afternoon when he met Estelle Pelt Armstrong going into town for the purpose of taking cigarettes to her husband then in jail. She inquired for her mother's mail at the post office  a check for the mother was then expected  and learned that the check or mail for her mother had been delivered to the appellant. Estelle Pelt Armstrong then went to the place of business of Deputy Sheriff Mose Hill and reported to him that her mother, Kizzie Pelt, and the appellant were at their home and were drunk and requested the officer to go to the home and take them into custody.
The officer immediately went to the appellant's home, entered the door and directed Kizzie Pelt to prepare herself to go to jail. It was at this point that the appellant ordered the officer from his home; he left the home and went to his car nearby and, after obtaining handcuffs or some other article, returned to the door of the home where he was met by the appellant. One of the witnesses testified that he observed blood on the officer as he left the home and went to the car. Linemen working on poles for the Florida Power Company in front of the home testified that the appellant was the aggressor and struck the officer over the head several blows with a 30-30 gun barrel. Appellant admitted *335 striking the officer one time over the head with the gun barrel. The officer shot the appellant in the breast as he beat him over the head with the gun barrel. He continued to beat him, according to the State witnesses, until one of them stopped him.
The appellant contends that the officer had no legal authority to go to his home and make an arrest without a warrant. Likewise, when the officer arrived at the home no law was being violated and there was no breach of the peace, and for these and various other reasons the officer became the aggressor and the appellant had a right to protect himself and his home. Authorities are cited to sustain the contention. On this point we find disputes and conflicts in the evidence. The Sheriff of Gulf County reached the scene of the tragedy shortly after the officer's death. He saw Kizzie Pelt and testified that she was not only drunk but bruises about her face disclosed that she had recently been beaten. Estelle Pelt Armstrong testified as to the appellant and her mother being drunk  hence the reason for requesting the officer to go to the scene.
Section 901.15, F.S.A., provides that an officer may arrest a person without warrant: (1) when a felony or misdemeanor is committed in the presence of the officer: "In the case of such arrest for a misdemeanor, the arrest shall be made immediately or on fresh pursuit"; (2) where a felony has been committed and the officer has reasonable ground to believe that the person to be arrested has committed it; (3) when he has reasonable grounds to believe that a felony has been or is being committed and reasonable grounds to believe that the person to be arrested committed it; (4) where a warrant has been issued charging any criminal offense and has been placed in the hands of any peace officer for execution. The trial Court, by appropriate instructions, submitted the question to the jury of whether or not the officer was engaged in a lawful arrest at the time the difficulty arose. The testimony as given by Estelle Pelt Armstrong and the Sheriff of Gulf County on the point was satisfactory to the jury. See Fields v. State, 160 Fla. 877, 36 So.2d 919; Rogers v. State, 158 Fla. 582, 30 So.2d 625; Cortes v. State, 135 Fla. 589, 185 So. 323, and similar cases.
It is next contended that the evidence adduced by the State is legally insufficient to establish a premeditated design on the part of appellant to kill or murder the officer. It is the settled law of this State that premeditation or intent to kill is a question of fact that may be established by direct or circumstantial evidence to be determined by the jury from all the evidence adduced. Snipes v. State, 154 Fla. 262, 17 So.2d 93. The defendant, when on the stand, admitted hitting the officer over the head one time with the gun barrel during the fight. Several State witnesses testified that the appellant was the aggressor and hit the officer several blows and was continuing so to do until they stopped him. It was shown that the officer took appellant's driver's license away from him and the Armstrong boy thereafter drove for him. Some three or four witnesses gave testimony as to having heard the appellant state that he would kill the officer. He was mad with the officer for taking from him his driving license. It is true that one of the witnesses for the State giving testimony as having heard the appellant state that he would kill the officer admitted that the appellant was "drinking" when he made the threat. It is well settled that disputes and conflicts in the evidence under our system is for the jury, under appropriate instructions. After a careful consideration of the entire record it is my view and conclusion that substantial justice was administered below and it is our duty under the law to affirm the judgment of the lower Court. I am unable to find in the record any extenuating circumstances calculated to justify this brutal murder.
ROBERTS, J., concurs.