KANNER, Chief Judge.
Appellant was charged with and found guilty of assault with intent to commit murder in the first degree and was sentenced to twenty years in the state prison. He instituted this appeal primarily on the proposition that the evidence under which he was convicted by the jury was not sufficient to sustain the charge, but that the offense could have been, at most, no greater than that of assault with intent to commit manslaughter.
The narrative of this case as it emerges through the record begins at approximately 10:00 o’clock on the night of Halloween, ■October 31, 1957, with a telephone call to the wife of the principal state’s witness, Deputy Sheriff Murdock, from appellant’s wife reporting that her husband was drinking and “pestering” her and requesting that Murdock come at once. The deputy not being armed with a warrant proceeded to appellant’s home where he, attired in official uniform and driving a regulation green and white sheriff’s patrol car, parked at the curb adjacent to appellant’s front yard. The lights were on in appellant’s house and the surrounding terrain was illuminated by a street light.
Prior to the officer’s arrival, appellant went in and “got his pistol,” saying that he wasn’t going to jail; and, being angry with his wife because he had heard her call “the law,” again started berating her and, in his words, “cussing her out” for telephoning Murdock. When the deputy arrived, he was met in the front yard by appellant’s wife. From this point on the narrative is fraught with conflicting statements and versions. However, the wife testified that when she met Murdock, she told him that “ * * * Glenn was drunk and had a pistol.” The deputy recounted that she further stated “ * * * he’s going to kill you.”
The story is then resumed with the emergence of appellant from the house with a pistol in his belt. Murdock tells that appellant asked him if “I was looking for him and I told him I was * * * he told me I’d better start drawing. And I told him I didn’t intend to draw with him. And he repeated that several times then and I was talking to him all the time, trying to get him to put his pistol down * * * I even went so far as to tell him that if he’d throw his down, I’d throw mine down and which he didn’t do. He told me that he had gone too far to stop now * * * ” Appellant tells that when he came from his house he told the deputy to leave his home but that the officer continued the verbal encounter with him; that during the course of the conversation, each asked the other to put his gun down, although neither did so. Appellant’s wife, standing in front of the deputy, told her husband to go in the house, that “If you shoot anybody it will be me.”
The next step of the altercation was the firing of a shot by the appellant, according to his story, into the ground; Murdock said he could not see the direction of the shot. Thereupon appellant withdrew from the deputy’s line of vision to the rear of the house; and the officer went to his automobile, opened the door on the side opposite the appellant’s house, and radioed for help while crouching on the floor of the vehicle.
Meanwhile, appellant, departing his own premises, crossed the street to the opposite *417 sidewalk where Murdock was within his unobstructed line of vision, called to the deputy to ask what he had in his hand, and the deputy responded that it was his pistol. Murdock states that he then started walking toward appellant with his pistol in his hand, telling him he was going to put him in jail and enjoining him to put his gun down, with appellant voicing refusal; that he crossed the street to the sidewalk, whereupon the shooting began. The deputy was wounded in the leg and hips, which wounds ultimately necessitated amputation of his left leg. Murdock states that appellant fired the first shot in that phase of the encounter in addition to having previously fired a shot in his own yard, that the shot struck him and knocked him down, and that he, Murdock, first fired as he was falling.
Appellant’s version of this phase is that when the deputy crossed the street and proceeded toward him, appellant’s gun was in his belt; that appellant, as the officer approached him, backed up into the vacant lot beyond the sidewalk; that the deputy ran toward him in a crouching position, firing his gun twice, the first shots fired; and that the verbal encounter previous to that had been as to who would first lay his pistol down. Appellant stated that he shot his own pistol empty, then ran rapidly through the vacant lot, waded around a lake for about the distance of a mile; that he had shot at the deputy but, further, that his first knowledge that he had hit Murdock came when he later telephoned his wife, whereupon he called the sheriff and voluntarily surrendered. Elsewhere he testified that he saw Murdock fall but did not see him lying on his back. All the parties testified that appellant and Murdock had known each other for many years, that they had been on friendly terms, and that appellant knew Murdock was a sheriff’s deputy.
Appellant principally premises his position that the evidence sustains no greater charge than that of assault with intent to commit manslaughter upon the propositions that there has been shown no intent to commit murder and that the difficulty between him and Murdock was a mutual combat.
In support of his argument that no intent to murder has been shown, appellant cites the case of Davis v. State, 1889, 25 Fla. 272, 5 So. 803. In that case there had been bad blood between the defendant and one Farnell. The evidence shows that the defendant presented his gun at Farnell in carrying distance, but does not show that the defendant fired the gun, or that he attempted to fire it; nor was it shown that the gun was loaded. The court held that the evidence did not show assault with intent to murder, but that it demonstrated clearly that the defendant could have shot Farnell if he so desired, and since he did not shoot, this was the best evidence that he did not intend so to do.
In the instant case appellant’s intent to murder is supported by the testimony showing that he appeared on the scene armed with a loaded automatic pistol; that he had vowed he was not going to jail; that, under Murdock’s testimony, the wife had told him appellant had declared he was going to kill the officer; that when he came from the house, he called upon the deputy to “start drawing”; that his wife stood in a position so as to protect the deputy from gunfire by her husband and told appellant so; that appellant fired a shot on his own premises, withdrew to his back yard whence he could have gone into the vacant property to the rear or into his house but instead left his premises to cross thé street to the front where he himself resumed the altercation and where he could observe Murdock who was radioing for help from his patrol car; that he fired the first shot in the encounter across the street, saw the officer fall, but continued firing until he had emptied his gun, then fled.
To substantiate his contention that the facts of this case are insufficient to establish any offense greater than that of assault with intent to commit manslaughter, appellant cites the case of Alday v. State, Fla. *418 1952, 57 So.2d 333. That was a case wherein a deputy sheriff was told that Alday and his housekeeper were drunk at Alday’s home. The deputy went to the home without a warrant and undertook to arrest the housekeeper. An altercation ensued, followed by an exchange of blows; and the deputy abandoned the encounter, went to his automobile, secured handcuffs, and returned to the house, where the quarreling was resumed. After exchange of several blows, the deputy whipped out his pistol and shot Alday in the breast, whereupon Alday struck the deputy over the head repeatedly with a gun barrel, with the result that the officer later died. Alday was in the trial court found guilty of murder in the first degree without recommendation of mercy; and on appeal this verdict was reduced to manslaughter, the court finding that the evidence was insufficient to sustain conviction for first degree murder.
The distinction between the Alday case and the one at bar is clear. In that case the deputy invaded the home without a warrant, engaged in an altercation with the home owner, abandoned the encounter in the home and went to his automobile to get handcuffs, returned to resume the difficulty, pulled out a pistol and shot Alday while Alday attacked him with the gun barrel. To the contrary, the evidence in the present case demonstrates that Murdock did not enter appellant’s home but instead retired to his automobile to call for help, that appellant voluntarily left the protection of his home and premises and proceeded across the street to resume the argument with Murdock, although no showing whatever is made that such action was necessary, and that the final altercation took place across the street and not upon appellant’s premises. Although the deputy had no warrant, it appears from the record that appellant knew Murdock well as an officer of the law, knew that his wife had summoned Murdock by telephone to come and was aware of her reason for so doing, that he stated he was not going to jail, that he quarreled with his wife for calling “the law,” and that when he emerged from his back yard and started to the vacant lot across the street he asked the deputy if he had radioed for help and received an affirmative answer. There was the additional testimony to the effect that the deputy arrived in an official sheriff’s patrol car wearing his official uniform, both clearly recognizable to appellant, and that Mur-dock told the appellant he was going to put him in jail.
The case of Caraker v. State, Fla.1955, 84 So.2d 50, 51, has a greater degree of similarity to the present case. The jury in that case had convicted Caraker of assault with intent to commit murder in the first degree. The principal ground relied upon for reversal was that the evidence was insufficient to sustain the conviction. The conviction was affirmed by the Supreme Court. It appears that Caraker had expressed to one Jennings his intention to kill him. On the following day, armed with loaded shotgun and pistol, Caraker approached Jennings at his place of business, pointed the shotgun at him, and repeated the threat. Jennings, aided by a customer, succeeded in disarming Caraker and no shot was fired. On appeal Caraker alleged that he had ample opportunity to have killed Jennings prior to being disarmed, and that since he did not actually fire the gun, there could have been shown no intent to commit murder. The Supreme Court pointed out that the use of the weapon in a particular case and the manner in which it is used, or expressions indicating an intent to commit murder, are all matters to be determined by the jury under proper instructions from the judge. The Supreme Court thus stated:
“The intent to kill may be established by a number of circumstances, such as, the fact that the weapon is directed at some vital spot on the assaultee’s body as was done here, or the intent may be affirmatively shown by the actual expressions of the one committing *419 the assault, such as, ‘I am going to kill you.’ See Fortner v. State, 119 Fla. 150, 161 So. 94.
“Whether the use of the weapon in a particular case and the manner in which it is used and the intent indicated by the manner in which it is used, or simultaneous expressions of the one committing the assault indicate an intent to commit murder, are all questions to be decided by the jury under proper instructions by the judge. This rule applies, of course, unless the record is totally lacking in any evidence indicating the murderous intent. The record before us contained abundant evidence to justify submitting this question to the jury. Likewise, the evidence was adequate to sustain the jury’s conclusion of guilt.”
Under appellant’s contention that this was a situation of mutual combat, we may here point out that mutual combat is predicated upon the proposition that both parties involved are at fault, neither being the aggressor more than the other, and if in such combat one slays the other, such killing is manslaughter. Disney v. State, 1916, 72 Fla. 492, 73 So. 598. The facts of this case as demonstrated by the record show appellant to have been the aggressor throughout, from the arming of himself with a loaded automatic pistol when he heard his wife telephone Murdock, through his moving onto the scene in the yard with the command to the officer to “start drawing,” his firing of the shot in his own yard, his voluntary movement across the street and his accosting of the deputy from that position, and his firing there of the first shot, then emptying his pistol by shooting it at the deputy after he had seen him fall. In fact, it was only after Murdock was incapacitated that appellant abandoned his role as aggressor and fled.
In addition to the chief witness, Deputy Murdock, there were several other supporting state witnesses as to various phases. The jury accepted the state’s version of the affray and concluded in the light of its evaluation of testimony and credibility of witnesses that the appellant’s offense was such as to evoke the verdict of assault with intent to commit murder in the first degree. The testimony abundantly supported the verdict. This court can find in the record no basis for saying that the verdict was reached erroneously. The judgment and sentence is accordingly affirmed.
Affirmed.
ALLEN, J., and PATTERSON, TERRY B., Associate Judge, concur.