443 So.2d 286 (1983)
Julian A. RODRIGUEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 82-1373.
District Court of Appeal of Florida, Third District.
December 22, 1983.
*287 Bennett H. Brummer, Public Defender, Scherman & Zelonker and Regina F. Zelonker, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Richard E. Doran, Asst. Atty. Gen., for appellee.
Before HUBBART, DANIEL S. PEARSON and FERGUSON, JJ.
DANIEL S. PEARSON, Judge.
Rodriguez, charged with attempted first-degree murder and convicted of attempted second-degree murder, contends in this appeal that the trial court erred in denying his request to charge the jury on attempted manslaughter, the effect of which, says Rodriguez, was to deprive him of a potential jury pardon.
The questions before us are whether attempted manslaughter is an offense under Florida law; if so, whether the failure to instruct thereon upon the defendant's request was error; and, if so, whether the error can be considered harmless in light of the jury having been instructed on aggravated assault. For the reasons which follow, we reverse the defendant's conviction upon a holding that (1) attempted manslaughter is a crime in Florida, at least under circumstances where, as here, the facts will support a reasonable inference that the manslaughter attempted would have been a voluntary manslaughter at common law[1]; (2) the trial court's refusal *288 to instruct the jury on attempted manslaughter, a lesser degree of the crime of attempted second-degree murder for which he was convicted, was error; and (3) such error was not rendered harmless by the jury having been instructed on aggravated assault.

I.
Manslaughter, in general,[2] is defined in Section 782.07, Florida Statutes (1981), as:
"The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of Chapter 776 and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter, shall be deemed manslaughter and shall constitute a felony of the second degree... ."
The underlying assumption of the Florida cases which have thus far directly or indirectly addressed the question of whether there is a crime of attempted manslaughter in Florida has been that the manslaughter statute deals solely with unintentional killings, that is, those which are effected by the culpable negligence of the defendant. This assumption has inevitably led to the uniform conclusion that it is paradoxical to say that a person may attempt (act voluntarily and intentionally) to commit manslaughter (act involuntarily and unintentionally). See Lassiter v. State, 98 Fla. 370, 373, 123 So. 735 (1929) (Brown, J., dissenting); Taylor v. State, 401 So.2d 812, 816 (Fla. 5th DCA 1981) (Dauksch, C.J., concurring and dissenting); Robinson v. State, 338 So.2d 1309, 1311 n. 1 (Fla. 4th DCA 1976). But despite recognizing the illogic of this conclusion, the two Florida courts which to date have directly addressed the question of whether there exists the crime of attempted manslaughter have been persuaded that such a crime exists based on long-standing Florida precedent holding that the analogous and, to them, equally illogical, crime of assault with intent to commit manslaughter exists. Brown v. State, 431 So.2d 247 (Fla. 1st DCA 1983); Taylor v. State, 401 So.2d 812. See also Tillman v. State, 440 So.2d 666 (Fla. 1st DCA 1983). Thus, in Taylor, adopted in Brown, and most recently followed in Tillman,[3] the court reasoned:
"[I]f we start with the premise that there can be an assault with intent to commit the same [involuntary] act (manslaughter), then it must follow that there can be an attempt (the formation of an intent) to commit the crime, when the other elements of attempt are present. Thus precedent, if not logic, requires that we hold that there is a crime of attempted manslaughter in Florida." 401 So.2d at 816 (emphasis in original).
We agree with the conclusion in Taylor, Brown and Tillman that there is a crime of attempted manslaughter in Florida; however, because we do not accept the underlying assumption that the manslaughter statute is restricted to unintentional killings, we find no logical absurdity in this conclusion in a factual setting where, as here, the manslaughter attempted would have been a voluntary manslaughter at common law.

*289 II.
Although one cannot attempt to do an unintentional act, Williams v. State, 41 Fla. 295, 26 So. 184 (1899); but see Gentry v. State, 437 So.2d 1097 (Fla. 1983), manslaughter embraces both intentional (voluntary) killings,[4]see W. LaFave & A. Scott, Criminal Law §§ 75-77 (1972); 2 C. Torcia, Wharton's Criminal Law §§ 153-165 (14th ed. 1979); R. Perkins, Perkins On Criminal Law 51 (2d ed. 1969), and unintentional (involuntary) killings, see W. LaFave & A. Scott, supra, §§ 78-79, at 586; 2 C. Torcia, supra, §§ 166-172, at 263; R. Perkins, supra, at 70.
Among the intentional killings recognized at common law as voluntary manslaughter were those committed (1) in the heat of passion, Forehand v. State, 126 Fla. 464, 470, 171 So. 241, 243 (1936) (a heat of passion killing is one arising from adequate provocation, that is, provocation "calculated to excite such anger as might obscure the reason or dominate the volition of an ordinary reasonable man"); Disney v. State, 72 Fla. 492, 502, 73 So. 598, 601 (1916) (when the mind operates in the heat of passion, "pre-meditation is supposed to be impossible, and depravity which characterizes murder in the second degree absent"); Olds v. State, 44 Fla. 452, 461, 33 So. 296, 299 (1902) ("A killing in sudden passion, excited by sufficient provocation, is manslaughter, not because the law supposes that this passion made ... (the slayer) unconscious of what he was about to do, and stripped the act of an intent to commit it, but because it presumes that passion disturbed the sway of reason, and made him regardless of her admonitions"); see Collins v. State, 88 Fla. 578, 102 So. 880 (1925); Pridgeon v. State, 425 So.2d 8 (Fla. 1st DCA), rev. denied, 421 So.2d 68 (1982)[5]; (2) in mutual combat, Eiland v. State, 112 So.2d 415, 419 (Fla. 2d DCA 1959) ("[M]utual combat is predicated upon the proposition that both parties involved are at fault, neither being the aggressor more than the other, and if in such combat one slays the other, such killing is manslaughter."); see Disney v. State, 73 So. 598; Holland v. State, 12 Fla. 117 (1867-68)[6]; (3) by the use of excessive force to defend oneself, Roberts v. State, 425 So.2d 70 (Fla. 2d DCA 1982), rev. denied, 434 So.2d 888 (Fla. 1983); Pierce v. State, 376 So.2d 417 (Fla. 3d DCA 1979), cert. denied, 386 So.2d 640 (Fla. 1980); see Martinez v. State, 360 So.2d 108 (Fla. 3d DCA 1978), cert. denied, 367 So.2d 1125 (Fla. 1979); (4) by the use of excessive force to resist an unlawful arrest, Alday v. State, 57 So.2d 333 (Fla. 1952); Roberson v. State, 43 Fla. 156, 29 So. 535 (1901); and (5) with neither premeditation nor depravity, Cook v. State, 46 Fla. 20, 35 So. 665 (1903); accord, Lindsey v. State, 53 Fla. 56, 43 So. 87 (1907) (same rule in case of assault with intent to commit second-degree murder or manslaughter); see also Manuel v. State, 344 So.2d 1317 (Fla. 2d DCA 1977), cert. dismissed, 355 So.2d 515 (Fla. 1978).[7] Just as an intentional killing may constitute manslaughter, an unintentional killing, as for example, where the killing is brought about by the culpable negligence of the defendant, may constitute manslaughter. Bess v. State, 146 Fla. 562, 1 So.2d 580 (1941); Gainer v. State, 100 Fla. 164, 129 So. 576 (1930); Folks v. State, 85 Fla. 238, 95 So. 619 (1923); Kent v. State, 53 Fla. 51, 43 So. 773 (1907).

III.
Although the common-law crime of manslaughter was codified by statute in 1868, *290 its definition as the "killing of a human being, by the act, procurement, or culpable negligence of another," which is neither excusable or justifiable, nor otherwise condemned as murder, has remained unchanged since 1892.[8] Since that time, the quoted statutory language has been construed as embracing both voluntary and involuntary manslaughter, a construction which first led the courts to the perfectly logical conclusion that there is such an offense as assault with intent to commit manslaughter.
In Williams v. State, 41 Fla. 295, 26 So. 184, the defendant was found guilty of assault with intent to commit manslaughter. Claiming that there was no such crime, the defendant moved for arrest of judgment, and thereafter appealed the denial of his motion. The Florida Supreme Court affirmed, holding that since manslaughter included intentional killings, the crime of assault with intent to commit manslaughter does exist:
"[I]t must be found that the accused committed the assault with intent to take life, for although an unintentional or involuntary killing may in some cases be unlawful, and a felony, no man can intentionally do an unintentional act; and without the intent the assault cannot be punished under this statute, even though the killing, had it been committed, would have amounted to a felony... .
... .
"It will readily be perceived by an analysis of the language of [the homicide statute] that there is nothing to exclude from its provisions all intentional homicides, or to include within the definition of murder all intentional killings, unless the intention is so deliberate as to amount to a premeditated design.
... .
"[T]here is nothing in our statute which implies that the intent to take life must be deliberate or premeditated... ." 41 Fla. at 298-300, 26 So. at 185-86.
See also Grantham v. State, 139 Fla. 129, 132, 190 So. 495, 496 (1939) ("The intent [to take the life of the victim of the assault] must be proven to justify conviction of assault with intent to commit manslaughter."); Bryan v. State, 45 Fla. 8, 34 So. 243 (1903); Knight v. State, 44 Fla. 94, 32 So. 110 (1902); McNeal v. Culver, 365 U.S. 109, 81 S.Ct. 413, 5 L.Ed.2d 445 (1961) (discussing Florida law).
It obviously follows from Williams that if the manslaughter attempted is a voluntary manslaughter, there is no logical impediment to concluding, and we do so conclude, that one can attempt to commit a voluntary manslaughter.[9]

*291 IV.
Having concluded that the crime of attempted manslaughter is an offense under the circumstances of this case, we turn to the question of whether the trial court erred when it refused to instruct the jury thereon. We think the answer is selfevident. Where a homicide has in fact occurred, the jury must be instructed on all degrees of murder from the degree charged and below, as well as manslaughter. Lewis v. State, 377 So.2d 640 (Fla. 1979); Martin v. State, 342 So.2d 501 (Fla. 1977); Brown v. State, 245 So.2d 68 (Fla. *292 1971), modified, 408 U.S. 938, 92 S.Ct. 2870, 33 L.Ed.2d 759 (1972); Fuller v. State, 414 So.2d 264 (Fla. 3d DCA 1982). It necessarily follows that where death has not occurred and the offense charged is consequently attempted murder, the jury must be instructed on attempt to commit all degrees of murder from the degree charged and below and, at least where the attempt is to commit voluntary manslaughter, on attempted manslaughter. See Brown v. State, 206 So.2d 377 (Fla. 1968); Fla.R.Crim.P. 3.490, 3.510.

V.
Finally, we address the question whether the trial court's refusal to charge on attempted manslaughter can be considered harmless under the circumstances of this case. The jury was instructed on the lesser-included offense of aggravated assault, which as a third-degree felony, § 784.021, Fla. Stat. (1981), is punishable in the same manner as attempted manslaughter, § 777.04(4)(c), Fla. Stat. (1981). It has been stated, albeit in dictum, that "if the jury is given the opportunity of convicting the defendant of a lesser included offense which is greater than or at least equal in punishment to the attempt, failure to instruct on attempt may be harmless error." Garrison v. State, 340 So.2d 1171, 1173 (Fla. 4th DCA 1976), cert. denied, 348 So.2d 953 (Fla. 1977) (emphasis supplied). Assuming, arguendo, that there may be cases in which a jury's pardon power can be said to be unaffected by the omission of an attempt instruction because a lesser-included offense of equal degree was presented to it for determination, this is not such a case. See State v. Bruns, 429 So.2d 307 (Fla. 1983) (error of failing to instruct jury on petit larceny not harmless where defendant convicted of robbery of property having a value of less than $100, notwithstanding that jury instructed on attempted robbery, an offense which carries a higher penalty than petit larceny); Piantadosi v. State, 399 So.2d 382 (Fla. 3d DCA), rev. denied, 408 So.2d 1095 (Fla. 1981) (failure to request instruction on one second-degree misdemeanor one step removed from conviction is not waiver of right to requested instruction on another second-degree misdemeanor); Hunter v. State, 389 So.2d 661 (Fla. 4th DCA 1980) (error harmful per se where court fails to instruct on third-degree murder, an offense immediately below second-degree murder for which defendant convicted, notwithstanding that jury instructed on manslaughter, an offense of equal degree with third-degree murder). Although here the jury was given the opportunity to return a verdict on the "equal" offense of aggravated assault, the jury may have rejected that opportunity because it concluded that Rodriguez shot at the officer with intent to kill.[10] Concluding that the defendant intended to kill, but not convinced that he acted with premeditation or in a manner evincing a depraved mind, the jury might have exercised its pardon power by convicting the defendant of attempted manslaughter. See State v. Bruns, 429 So.2d 307. Therefore, we cannot find that the error of failing to instruct on attempted manslaughter was harmless under the circumstances of this case.
Reversed and remanded for a new trial.
NOTES
[1] There was testimony which, if believed by the jury, would support the conclusion that on the night in question the defendant was not aware that the person who shouted at him to stop and came after him as he was walking away from the scene of a disturbance was a police officer, and testimony from which the jury could have inferred that the defendant fired shots at this person after having first fired up in the air to ward off his unknown pursuer. While there does not appear to be evidence that the defendant fired at this person only after having been fired upon, so as to bring this case within the concept of mutual combat voluntary manslaughter, see infra, the evidence would sustain an inference that the defendant did not act with premeditation or evincing a depraved mind, but did act with the intent to kill so as to bring this case within the category of intentional killings committed with neither premeditation nor depravity, see infra.
[2] Specifically defined as killings constituting manslaughter are assisting self-murder (§ 782.08, Fla. Stat. (1981)), the willful killing of an unborn quick child (§ 782.09, Fla. Stat. (1981)), unnecessary killing to prevent an unlawful act (§ 782.11, Fla. Stat. (1981)), and killing someone while driving while intoxicated (§ 316.1931(2), Fla. Stat. (Supp. 1982) (formerly § 860.01(2), Fla. Stat. (1981)).
[3] The question of whether the crime of attempted manslaughter exists, having been certified in Taylor, Brown and Tillman, is now pending before the Florida Supreme Court.
[4] Apparently, the rule in the majority of the United States is that there is such a crime as attempted voluntary manslaughter. See Sachs, Is Attempt To Commit Voluntary Manslaughter A Possible Crime?, 71 Ill.B.J. 166 (1982).
[5] If an accidental death occurs "in the heat of passion," the killing in most circumstances is excusable homicide. § 782.03, Fla. Stat. (1981).
[6] If an accidental death occurs "upon a sudden combat, without any dangerous weapon being used and not done in a cruel or unusual manner," the killing is excusable homicide. § 782.03, Fla. Stat. (1981). See Tipton v. State, 97 So.2d 277 (Fla. 1957); Aiken v. State, 425 So.2d 641 (Fla. 3d DCA 1983).
[7] Other intentional killings which are manslaughter are elsewhere defined. See n. 2, supra.
[8] In 1868, the Florida Legislature codified the law of homicide. Ch. 1637, Laws of Fla. (1868). The statute laid out a general definition of manslaughter, which is almost identical to Section 782.07.

"Sec. 3. The killing of one human being, by the act, procurement, or omission of another, in cases where such killing shall not be murder, according to the provisions of this chapter, is either justifiable or excusable homicide or manslaughter."
The chapter continued with various sections listing certain acts, some common law manslaughter killings, others not, and assigning to them degrees of manslaughter. Voluntary heat of passion killing was listed as third-degree manslaughter. Involuntary heat of passion killing, committed under circumstances not constituting excusable homicide, was listed as fourth-degree manslaughter. In 1892, the Legislature revised the homicide statute. Title 2, Ch. 2, Fla.Rev.Stat. (1892). Manslaughter was defined exactly as it is today in Section 782.07 (§ 2384, Fla.Rev.Stat. (1892)). Degrees of manslaughter were eliminated. Certain killings (assisting self-murder, killing of an unborn child, abortion, unnecessary killing to prevent an unlawful act, killing by mischievous animal, drowning in an overloaded vessel, death from racing a steamboat, and killing by an intoxicated physician), all of which had appeared in the 1868 statute, were specifically listed as manslaughter. Other classic common-law manslaughters (misdemeanor manslaughter, heat of passion killings, involuntary killing of a trespasser, and killing through negligence) were no longer specifically listed but became subsumed within the general definition. The present manslaughter statute continues this structure. Classic manslaughters are contained within the general definition, and certain specific killings are separately defined as manslaughter. See §§ 782.08, 782.09, 782.11, Fla. Stat. (1981); § 316.1931(2), Fla. Stat. (Supp. 1982).
[9] Because we find, infra, that the facts in the present case are susceptible of leading to a reasonable inference that the manslaughter attempted was a voluntary manslaughter, it is unnecessary for us to decide whether one can attempt to commit an involuntary manslaughter. We do, however, note in passing that the Florida precedent holding that there is a crime of assault with intent to commit manslaughter, although in our view requiring a holding that there is a crime of attempted voluntary manslaughter, does not, as Taylor v. State, 401 So.2d 812, says, and its progeny imply, require a holding that there is a crime of attempted involuntary manslaughter, that is, manslaughter by culpable negligence. Williams v. State, 26 So. 184, from which the Florida precedent cited in Taylor derives, stands, as we have said, solely for the proposition that there is a crime of assault with intent to commit voluntary manslaughter and indeed states there can be no such thing as an assault to commit involuntary manslaughter. We also note that the holding in Charlton v. Wainwright, 588 F.2d 162 (5th Cir.1979), that there is a crime of attempted manslaughter by culpable negligence, relied on in Taylor, does not withstand critical analysis. The basis of Charlton's holding is its initial conclusion that Florida courts had construed culpable negligence as being the equivalent of intentional or quasi-intentional behavior. But while it was indeed said in Cannon v. State, 91 Fla. 214, 221, 107 So. 360, 363 (1926), that culpable negligence is equivalent to an intentional violation of the rights of others, Cannon must be read in conjunction with Kent v. State, 53 Fla. 51, 43 So. 773 (1907), upon which the Cannon statement is based. Kent's declaration that "intent is not an essential element of the statutory definition of [manslaughter] when committed by culpable negligence," 53 Fla. at 54-55, 43 So. at 774, has consistently been held to mean that "in statutory manslaughter, the element of criminal intent has been supplanted by the statutory element of `culpable negligence.'" Hulst v. State, 123 Fla. 315, 319, 166 So. 828, 829-30 (1936) (emphasis supplied). See Dominique v. State, 435 So.2d 974 (Fla. 3d DCA 1983) (culpable negligence "replaces" the element of criminal intent). Thus, as can plainly be seen, Cannon's equating culpable negligence with an intentional violation is not meant to convey that intent may be inferred from the culpably negligent act, but rather that in instances where criminal punishment for culpable negligence is deemed appropriate, culpable negligence will be substituted for the ordinarily required intent. See Carraway v. Revell, 116 So.2d 16, 20-21 (Fla. 1959) ("In statutory manslaughter, the element of criminal intent (ordinarily an essential element of a crime) is supplanted by culpable negligence... . The crime of manslaughter may exist without criminal intent when culpable negligence is substituted therefore... ." (emphasis supplied)); Pitts v. State, 132 Fla. 812, 182 So. 234 (1938); Austin v. State, 101 Fla. 990, 993, 132 So. 491, 493 (1931) (culpable negligence takes the place of criminal intent); Lassiter v. State, 98 Fla. 370, 123 So. 735 (1929); Anthony v. State, 246 So.2d 600 (Fla. 2d DCA), cert. denied, 249 So.2d 441 (Fla. 1971); McCullers v. State, 206 So.2d 30 (Fla. 4th DCA), cert. denied, 210 So.2d 868 (Fla. 1968). But see Kelly v. State, 78 Fla. 636, 83 So. 506 (1919) (finding defendant guilty of attempted culpable negligence manslaughter with intent to kill). This distinction is explained by Professor Perkins:

"Often [criminal intent] is used to include criminal negligence as well as an actual intent to do the harmful deed [noting courts which have stated intent is inferred from the reckless conduct], although at other times such negligence is referred to as a substitute, so to speak, for criminal intent in connection with certain offenses [citing courts which have stated negligence takes the place of criminal intent]."
R. Perkins, supra, at 744.
The distinction, however, was overlooked in Charlton. Moreover, this court's statement in State v. Simone, 431 So.2d 718 (Fla. 3d DCA 1983), that "the Legislature intended the culpable negligence statute [§ 784.05, Fla. Stat.] to punish acts of the same character as those covered by the offense of manslaughter by culpable negligence ..., [where such] acts do not result in the death of the victim," id. at 722 (emphasis supplied), suggests, contrary to Charlton, that there is no crime of attempted manslaughter by culpable negligence.
Our conclusion that one can attempt to commit voluntary and intentional manslaughter also renders it unnecessary for us to concern ourselves with Gentry v. State, 437 So.2d 1097 (Fla. 1983), where the court held that attempt is a general intent crime, and in dictum went on to redefine third-degree murder as a general intent crime. If third-degree murder, which by definition has always been a non-intent crime, has now been converted, by Gentry's novel dictum, into a general intent crime, then manslaughter by culpable negligence, also a non-intent crime, may by the same reasoning be a general intent crime which, under Gentry's analysis, can be attempted.
[10] Inter alia, an aggravated assault is an assault with a deadly weapon without intent to kill. § 784.021(1)(a), Fla. Stat. (1981).